T.C. Memo. 2005-283


UNITED STATES TAX COURT


TIMOTHY J. COBURN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6695-04.                    Filed December 6, 2005.


Richard A. Seigal and Mark S. Gregory, for petitioner.

Michael J. Proto, for respondent.


MEMORANDUM OPINION


WELLS, Judge:  Respondent determined a deficiency in petitioner's 2000 Federal income tax of $277,951 and a section 6662 accuracy-related penalty of $55,590.20.  The issue to be decided is whether petitioner must recognize discharge of indebtedness income in 2000 with respect to a loan on which petitioner defaulted.  Unless otherwise indicated, all section

references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are hereby incorporated by reference and are found as facts in the instant case. At the time of filing the petition, petitioner resided in Glastonbury, Connecticut.

During 1996, petitioner received stock of PhyMatrix Corporation (PhyMatrix) and CareMatrix Corporation (CareMatrix) which had an aggregate value of $1,675,000 at the time of receipt.[1] Petitioner incurred a Federal income tax liability of $621,980 related to the receipt of the stock.[2] Petitioner borrowed from CareMatrix an amount equal to the Federal income tax liability (the loan), pledging 57,248 shares of PhyMatrix common stock (the collateral) as security for the loan. The loan and the pledge of the collateral are hereinafter collectively referred to as the loan transaction.

---

[1]The record does not reveal the separate amount or value of the CareMatrix stock or the value of the PhyMatrix stock at the time of receipt by petitioner.

[2]Petitioner appears to have taken an aggregate basis in the stock of both CareMatrix and PhyMatrix equal to the aggregate $1,675,000 value of these stocks at the time of receipt.

On April 15, 1997, to complete the loan transaction, petitioner executed the following three documents: (1) A promissory note (the promissory note), (2) a stock pledge agreement (the stock pledge agreement), and (3) a stock transfer power (the stock transfer power). The promissory note, stock pledge agreement, and stock transfer power are sometimes hereinafter referred to as the loan documents. The promissory note provided that the principal and interest were due and payable on the earlier of either April 15, 2000, or the date of the registration of any shares of PhyMatrix stock received by petitioner pursuant to an agreement dated May 3, 1996. The promissory note further provided that petitioner would secure the liability underlying the promissory note with the collateral. The stock pledge agreement also provided that petitioner was required to pledge the collateral as security for the liability underlying the promissory note and set forth the rights and duties of petitioner and CareMatrix with respect to the collateral. The stock transfer power provided that petitioner sold, assigned, and transferred the collateral for value received. At all relevant times, Abraham D. Gosman (Mr. Gosman) served as Chief Executive Officer and Chairman of the Board of CareMatrix and was responsible for the terms of the loan documents.

As of April 15, 1997, the collateral had an aggregate market value of approximately $750,000, which represented 120 percent of the outstanding principal due on the promissory note.[3] At the request of CareMatrix, petitioner delivered the loan documents to CareMatrix's counsel. On or about May 29, 1997, CareMatrix took possession of the loan documents and the stock certificate for the collateral from its counsel.

The promissory note became due and payable on April 15, 2000, at which time the outstanding principal and interest due was $746,376.52. CareMatrix subsequently demanded payment, but petitioner refused to pay, alleging that the promissory note was nonrecourse and that CareMatrix held the collateral. CareMatrix made no further collection efforts.

---

[3]The parties stipulated the following with respect to the value of the collateral as of Apr. 15, 1997: "Pursuant to the Note, the shares pledged had an aggregate market value of 120% of the principal borrowed - approximately $750,000.00." As noted above, petitioner appears to have taken a basis in the CareMatrix and PhyMatrix stock equal to the value of the PhyMatrix and CareMatrix stock at the time the stock was received by petitioner during 1996. However, the record provides no evidence that the value of the PhyMatrix stock was the same on April 15, 1997 (the date of the loan transaction) as it was on the date that the stock was transferred to petitioner during 1996. Because the value of the collateral may have fluctuated from the date that petitioner received the PhyMatrix stock until the date that petitioner pledged the PhyMatrix stock as collateral, the aforementioned stipulation as to the value of collateral on Apr. 15, 1997, is insufficient to establish petitioner's basis in the collateral on that date. Consequently, we are unable to determine from the record petitioner's basis in the collateral.

On July 14, 2000, PhyMatrix filed a bankruptcy plan of reorganization, which became effective on September 21, 2000. The plan provided for the conversion of PhyMatrix stock to shares of the newly reorganized entity. However, the plan required that any PhyMatrix shares be tendered for conversion by March 20, 2001. The collateral was not timely tendered for conversion.[4]

Respondent determined that petitioner's default on the promissory note resulted in cancellation of indebtedness income in the amount of $750,000 and that petitioner should be subject to an accuracy-related penalty of $55,590.20.

### Discussion

Section 61(a)(12) provides that gross income includes income from discharge of indebtedness, which generally equals the amount due on the obligation less the amount of any consideration paid for the discharge. Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673. Section 61(a)(3) provides that gross income includes gains derived from dealings in property. Section 1001(a) provides that gain from the sale or other disposition of property is the excess of the amount realized over the property's adjusted basis and that loss from the sale or other disposition of property is the excess of the

---

[4]We note that sec. 4 of the Stock Pledge Agreement appears to require petitioner to tender the collateral for conversion, pledge shares of the newly reorganized entity as security on the loan, and deliver such pledged shares to CareMatrix.

property's adjusted basis over the amount realized.  Relying on
Cozzi v. Commissioner, 88 T.C. 435 (1987),[5] respondent contends
that petitioner's default on the loan results in discharge of
indebtedness income to petitioner pursuant to section 61(a)(12).
Petitioner contends that the loan default is treated as a sale or
other disposition of the collateral pursuant to sections 61(a)(3)
and 1001(a), rather than a discharge of indebtedness.

The facts and circumstances of the instant case demonstrate
that petitioner abandoned the collateral in 2000.[6]  CareMatrix
took possession of the loan documents and the stock certificate
during the loan transaction.  CareMatrix demanded payment from
petitioner in 2000, but petitioner refused to pay on grounds that

_____

[5]Respondent also cites Carlins v. Commissioner, T.C. Memo.
1988-79, which relied on our holding in Cozzi v. Commissioner, 88
T.C. 435 (1987).

[6]We apply a facts and circumstances analysis to determine if
or when an abandonment occurred.  Cozzi v. Commissioner, supra at
446.  "The proper test is whether, under the facts and
circumstances, it is clear for all practical purposes that the
taxpayer will not retain the property; an overt act of
abandonment by the taxpayer is not necessary."  L&C Springs
Associates v. Commissioner, 188 F.3d 866, 868 (7th Cir. 1999),
affg. T.C. Memo. 1997-469.

In 2925 Briarpark v. Commissioner, 163 F.3d 313, 318 (5th
Cir. 1999), affg. T.C. Memo. 1997-298, the Court of Appeals for
the Fifth Circuit stated that sec. 61(a)(3) applies if (1) the
debtor is relieved of the obligation to repay the debt and (2)
the debtor is relieved of title to the collateral.  However, the
court did not hold that sec. 61(a)(3) cannot apply in absence of
a formal transfer of title.  Consequently, the formal passage of
legal title does not necessarily establish the time of
abandonment.  L&C Springs Associates v. Commissioner, supra at
870.

the loan was nonrecourse and that CareMatrix held the collateral. CareMatrix took no further action to collect the outstanding principal and interest on the loan from petitioner.  In an affidavit stipulated by the parties, Mr. Gosman stated that petitioner and CareMatrix "intended that, in the event of a default, repayment would be made only from the collateral and no other source."  Consequently, we conclude that petitioner abandoned the collateral upon his default.  Accordingly, we consider the Federal income tax consequences of petitioner's default on the loan and abandonment of the collateral.

The parties in the instant case dispute whether the loan is recourse or nonrecourse.[7]  The regulations under section 1001 distinguish between a debtor's disposition of collateral in satisfaction of an underlying nonrecourse liability and a debtor's disposition of collateral in satisfaction of an underlying recourse liability.[8]  Specifically, section 1.1001-2(a), Income Tax Regs.,[9] provides that the amount realized on the

_____

[7]Respondent concedes that the loan constitutes bona fide indebtedness.

[8]Such a distinction may affect the character of any gain or loss on the transaction and the availability of certain exclusions from gross income.  See secs. 1221, 108.

[9]Sec. 1.1001-2, Income Tax Regs. Discharge of liabilities.--

(a) Inclusion in amount realized. (1) In general.-- Except as provided in paragraph (a)(2) and (3) of this section, the amount realized from a sale or other
(continued...)

sale or other disposition of property generally includes the amount of liabilities from which the debtor is discharged but that the amount realized on the disposition of property securing a recourse liability does not include discharge of indebtedness income.  Consequently, a debtor's transfer, or abandonment, of property to a creditor in satisfaction of a nonrecourse liability is treated as a sale or other disposition of the property, and any resulting income constitutes gain on the disposition of property rather than discharge of indebtedness income.[10]  L&C Springs Associates v. Commissioner, 188 F.3d 866, 868 (7th Cir. 1999), affg. T.C. Memo. 1997-469.  In contrast, a debtor's transfer of property to a creditor in satisfaction of a recourse liability results in gain from the sale or other disposition of property to the extent that the fair market value of the property

---

[9](...continued)
disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition.

(2) Discharge of indebtedness.--The amount realized on a sale or other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12).  * * *

[10]If the amount of the nonrecourse liability exceeds the value of the property at the time of the transfer, the debtor realizes gain to the extent that the liability exceeds the debtor's basis in the property at the time of transfer. Commissioner v. Tufts, 461 U.S. 300, 313 (1983).

exceeds its basis and, to the extent that the liability exceeds the property's fair market value, discharge of indebtedness income is realized.  Frazier v. Commissioner, 111 T.C. 243, 245 (1998); sec. 1.1001-2(c), Income Tax Regs.

In the instant case, petitioner contends that the loan is nonrecourse.  As to the recourse nature of the loan, respondent is not of one mind.  Respondent's trial memorandum refers to the liability on the loan as nonrecourse.  Respondent's opening brief contends that the Federal income tax result in the instant case does not depend on whether the loan is recourse or nonrecourse.  Respondent's reply brief, however, contends that the loan is recourse.  For the reasons discussed below, we conclude that petitioner's abandonment of the collateral did not result in discharge of indebtedness income to petitioner during petitioner's taxable year 2000, regardless of whether the liability underlying the promissory note is recourse or nonrecourse.[11]

As stated above, a debtor's abandonment of collateral in satisfaction of a nonrecourse liability is treated for Federal income tax purposes as a sale of the collateral pursuant to section 1001(a).  L&C Springs Associates v. Commissioner, supra at 868.  Consequently, in the instant case, assuming that the

---

[11]Consequently, we need not decide whether the loan is recourse or nonrecourse.

loan is nonrecourse, we conclude that any income realized by petitioner on the abandonment of the collateral in satisfaction of the loan is properly treated for Federal income tax purposes as a gain on the sale or other disposition of the collateral rather than discharge of indebtedness income.  Id.; see sec. 1.1001-2(a)(1), Income Tax Regs.  Accordingly, we would hold that petitioner realized no discharge of indebtedness income in 2000 were we to assume that the underlying liability is nonrecourse.

As noted above, respondent's trial memorandum and opening brief contend that the default resulted in discharge of indebtedness income to petitioner in 2000.  Respondent's reply brief surprisingly contends, for the first time, that petitioner is alternatively liable for gain in the amount of $750,000, representing an amount realized of $750,000 and a basis of zero. However, respondent does not offer any evidence to support respondent's contention of a zero basis, and the record contains no such evidence.  Under such circumstances, respondent is prohibited from raising such an issue for the first time on brief.  See Smalley v. Commissioner, 116 T.C. 450, 456 (2001). Petitioner would be prejudiced were we to consider such an issue. Indeed, we note that respondent objected to petitioner's motion for leave to supplement the evidentiary record with evidence of the value and basis of the collateral, filed after respondent's new argument in respondent's reply brief, which motion we denied.

Petitioner obviously was surprised by respondent's raising of a new issue on brief that required additional evidence to decide.

Moreover, we find respondent's reliance on Cozzi v. Commissioner, 88 T.C. 435 (1987), to be misplaced.  In Cozzi, the Commissioner contended that the taxpayers realized discharge of indebtedness income upon their abandonment of worthless collateral securing a nonrecourse liability.  The taxpayers in Cozzi contended that they did not realize discharge of indebtedness income because they did not abandon the collateral during the year in issue.[12]  Id. at 446.  We held that the facts and circumstances evidenced an abandonment of worthless collateral by the taxpayers during the year in issue and that such an abandonment of worthless collateral securing a nonrecourse liability established a discharge of the underlying liability.  Id. at 445-448.  Cozzi did not involve a dispute of whether a debtor's abandonment of collateral should be treated for Federal income tax purposes as generating income from a sale or from a discharge of the underlying nonrecourse liability.

We now turn to an analysis of the Federal income tax treatment of the loan default and abandonment of the collateral based upon the assumption that the loan was recourse.  In contrast to a nonrecourse liability, a debtor's abandonment of

_____

[12]The taxpayers in Cozzi appear to have conceded that discharge of indebtedness income would result from an abandonment of the collateral.

collateral securing a recourse liability upon the debtor's default on the liability, alone, does not extinguish the underlying liability. Lockwood v. Commissioner, 94 T.C. 252, 260 (1990). Unlike collateral securing a nonrecourse liability, the collateral securing a recourse liability does not represent the only source of repayment.[13] In the instant case, the loan documents provide CareMatrix with the right to enforce petitioner's repayment of the loan, irrespective of whether petitioner abandoned the collateral to CareMatrix.[14]

---

[13]Black's Law Dictionary 1086 (7th ed. 1999) provides the following definitions of a recourse note and a nonrecourse note:

> recourse note. A note that may be satisfied upon default by pursuing the debtor's other assets in addition to the collateral securing the note. Cf. nonrecourse note.

> nonrecourse note. A note that may be satisfied upon default only by means of the collateral securing the note, not by the debtor's other assets. Cf. recourse note.

[14]We recognize, and petitioner does not dispute, that the terms of the loan documents on their face provide for a recourse liability. Petitioner instead contends that the loan is nonrecourse based upon two alternative contentions. The first contention is that the substance rather than the form of the transaction should govern and that the underlying facts and circumstances support the conclusion that the loan is nonrecourse. Alternatively, petitioner contends that the parties intended for the loan to be nonrecourse, that the parties made a mutual mistake in executing a promissory note that did not accurately reflect their intent, and that the terms of the loan documents should be reformed to accurately reflect such intent. Petitioner contends that petitioner "transferred" the collateral to CareMatrix in satisfaction of a nonrecourse liability, that the "transfer" of the collateral is properly treated as the sale

(continued...)

Specifically, the promissory note provides that a release of the collateral by petitioner does not satisfy petitioner's obligation.

> [The petitioner's liability] hereunder * * * shall
> remain unimpaired, notwithstanding * * * the release
> * * * of all or any part of security * * *.

The promissory note also does not waive the right of CareMatrix to pursue legal remedies upon nonpayment.

> [CareMatrix] shall not, by any act, delay, omission or
> otherwise be deemed to waive any of its rights or
> remedies hereunder unless such waiver be in writing and
> signed by [CareMatrix], and then only to the extent
> expressly set forth therein.

The stock pledge agreement provides that the pledge is to remain in effect until the loan is paid in full, at which time CareMatrix is to return the collateral to petitioner.

> Termination of Pledge.  This Pledge shall remain
> in effect until all terms and conditions of the Note
> have been satisfied in full and the Indebtedness has
> been paid in full whereupon the Lender shall forthwith
> assign, transfer and deliver to [petitioner] without
> representation, warranty or recourse, against the
> appropriate receipts, all the Pledged Shares, if any,
> then held by it in pledge hereunder.

Additionally, the period of limitations for CareMatrix to commence an action to enforce petitioner's repayment does not expire until April 15, 2006.  See Mass. Gen. Laws ch. 106,

---

[14](...continued)
of the collateral during petitioner's taxable year 2000, and that such a sale does not result in discharge of indebtedness income.

§ 3-118 (1998 & Supp. 2005).[15]  The foregoing demonstrates that petitioner's abandonment of the collateral, assuming the loan was recourse, did not discharge petitioner from the loan during petitioner's taxable year 2000.  CareMatrix would have until at least April 15, 2006, to enforce payment on the loan if it is recourse.  A taxpayer must recognize income from the discharge of indebtedness where (1) a liability exists at the time of the alleged discharge and (2) the taxpayer was in fact discharged from such liability.  Babin v. Commissioner, 23 F.3d at 1034; Waterhouse v. Commissioner, T.C. Memo. 1994-467.  In the instant case, the loan default does not result in discharge of indebtedness income, assuming the loan was recourse, because petitioner was never discharged from liability on the loan.  Accordingly, we hold that petitioner realized no discharge of indebtedness income with respect to the loan for petitioner's taxable year 2000.

---

[15]In the instant case, the promissory note provides:  "This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, to the maximum extent the parties may so lawfully agree."  Similarly, the stock pledge agreement provides:  "This Agreement shall in all respects be construed and interpreted in accordance with and governed by the laws of the Commonwealth of Massachusetts."  Consequently, the laws of Massachusetts govern the interests and rights of the parties with respect to these documents.  See Cook v. Commissioner, 80 T.C. 512, 520 (1983).  Mass. Gen. Laws ch. 106, sec. 3-118 (2005), provides that an action to enforce payment of a note must be commenced within 6 years after the due date stated in the note.  As noted above, the promissory note provided for a due date of Apr. 15, 2000.

On the basis of the foregoing, we hold that petitioner did not realize discharge of indebtedness income with respect to the loan default and abandonment of the collateral and that petitioner is not liable for a section 6662 accuracy-related penalty.  We have considered all contentions that the parties have raised.  To the extent not addressed herein, those contentions are without merit or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered for petitioner.</u>